IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| APRIL GILMORE-LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Case No. |
| | ) |
| SONNY PERDUE, Secretary | ) |
| UNITED STATES DEPARTMENT OF | ) |
| AGRICULTURE, RMA, | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, April Gilmore-Lee, by and through her undersigned counsel, and files this Complaint for damages for her causes of action against Defendants the United States Department of Agriculture, Risk Management Agency (hereafter "USDA"). Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794, and Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101.

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Plaintiff is employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 139, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court

for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

4. Plaintiff, April Alicia-Dean Gilmore-Lee is a United States citizen. She resides in Lee's Summit, Missouri.

5. Plaintiff is a black female who has participated in protected activity. She has been diagnosed with Attention Deficit Disorder (hereafter "ADD") and she is the primary caregiver to one child who has been diagnosed with Attention Deficit Hyperactivity Disorder (hereafter "ADHD") and high-functioning autism.

6. Defendant Perdue, in his capacity as Secretary of the USDA, is located in Washington, D.C.

7. The United States of America and its Agency, USDA Risk Management Agency, is located at 6501 Beacon Drive, Kansas City, Missouri.

## ADMINISTRATIVE PROCEDURES

8. After initiating an informal administrative complaint on January 10, 2017, Plaintiff timely filed an initial informal Complaint of Discrimination against the Defendant with the USDA Risk Management Agency's Office of Civil Rights on January 17, 2017. That administrative Complaint of Discrimination was assigned Case No. RMA-2017-00346. It was amended on August 29, 2017.

9. Plaintiff's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her race, color, disability and reprisal and retaliation because of prior protected activity.

10. Plaintiff has exhausted all administrative remedies in that on February 27, 2020, Defendant issued its Final Agency Decision on Plaintiff's claims.

11. Plaintiff timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

12. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of her administrative Complaints of Discrimination and they reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation.

13. Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokes her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

## **ALLEGATIONS COMMON TO ALL COUNTS**

14. Plaintiff is an African-American female with a dark brown skin hue. She is 5 feet and 10 inches tall.

15. At all times relevant to this Complaint, she has worn her naturally curly, dark brown hair in an afro or various braided hairstyle.

16. At all times relevant to this Complaint, Plaintiff has suffered from ADD. This condition is a physical and mental impairment that affects multiple of the Plaintiff's major life activities, including sleeping, concentrating, thinking, communicating, and working. When subjected to stressors, Plaintiff's mental impairment causes significant diminution in the Plaintiff's ability to think, concentrate, and focus.

17. Plaintiff is the primary caregiver to one male child, age 12.

18. At all times relevant to this Complaint, her son has suffered from ADHD and high-functioning autism. These conditions are physical and mental impairments that affect multiple of his major life activities, including sleeping, concentrating, thinking, communicating, and working.

19. At all times relevant to this Complaint, the Plaintiff was able to perform the essential functions of her job without reasonable accommodation.

20. Plaintiff has worked for the USDA for over fourteen years. She is now a Lead Legal Administrative Specialist, GS-14. This position is based in Washington, DC; however, she works out of Kansas City, Missouri. This position requires frequent travel throughout the United States.

21. Plaintiff began her employment with the USDA in October 2006 and from that time, until January 2017, as a Risk Management Specialist, GS-1101-13 with RMA's Office of Product Management, Policy Administration, and Standards Division ("PASD"), Underwriting Standards Branch ("USB"). As a Risk Management Specialist, Plaintiff's duties included review, analysis, and drafting of USDA policies, procedures, and practices, as well as regulations, legislation, and laws affecting USDA's clients and stakeholders of the Federal Crop Insurance Program.

22. Plaintiff has experienced discrimination continuously throughout her tenure as a Risk Management Specialist.

23. In November 2016, Plaintiff interviewed for and was not selected for the merit promotion to GS-01801-14, Chief, Policy Administration Branch, Product Management Procurement position, as advertised under Vacancy Announcement Number RMA-17-0006-RMA-TJ.

24. Subsequent to the initial announcement, Plaintiff became the victim of harassment. When she filed her EEO complaint, she became the victim of reprisal and retaliation. The first act of retaliation occurred when Plaintiff's confidential informal complaint was released to the agency at large.

25. Plaintiff possesses a Juris Doctorate degree, having graduated from law school in 2013.

26. Plaintiff's work in PASD directly supported the Policy Administration Branch for which she applied to be Branch Chief.

27. Plaintiff completed the Leadership Development Training Program provided by the USDA to assist employees in learning the skills required to be leaders within RMA.

28. Plaintiff was responsible for developing relationships, procedural processes, training, and providing presentations to large audiences about the crop insurance policies for which the Policy Administration Branch was responsible.

29. Plaintiff also served as the Agency's expert witness for the Federal Crop Insurance Program and is an Expert Level Regulatory writer for the program.

30. Plaintiff scored 17 points higher on the interview than the selectee.

31. The selectee was Chandra Mason, a petite, blonde, Caucasian female.

32. Ms. Mason, at the time of the September 9, 2016 vacancy announcement, had been with the Agency for approximately two years.

33. Ms. Mason began working for RMA on September 21, 2014, as an Agricultural Economist, GS-0110-12, with the Actuarial and Product Design Division subject to a one-year probationary period.

34. On September 21, 2015, Ms. Mason was promoted to a GS-13, step 6.

35. On September 14, 2016, Ms. Mason was awarded a Quality Step Increase promotion to a GS-13, step 7.

36. On September 14, 2016, Ms. Mason achieved the requisite time in grade to be eligible for promotion.

5

37. Ms. Mason did not have commensurate education or skills related to the Product Administration Branch. She had not previously held a supervisory position either in the public or private sector; she does not have the same educational background as she has a Master's degree; she did not have commensurate practical experience as Plaintiff in policy and regulatory writing; she did not score as highly on the interview as Plaintiff; and she had not completed the RMA's Leadership Development Training Program at the time of the selection.

38. At the time of the selection, the female Branch chiefs were all petite, Caucasian women with blonde or light brown hair.

39. Plaintiff believes only two African-American females had been chosen as Branch Chief in the Office of Product Management for as long as Plaintiff can remember. A petite, light-skinned black, one Branch Chief held the position for only approximately a year and then was moved into a division in which there had been no African-Americans and no females as Branch Chiefs. She no longer holds a supervisory position. The other, also a petite, light-skinned African-American female, held the position for one year and no longer works for the Federal government. There have been no African-American males hired as Branch Chiefs or promoted to GS-14 in the Office of Product Management for as long as the Plaintiff can remember.

40. The Agency engages in "tokenism," choosing token females or African-Americans to fill positions while the vast majority of those in leadership positions are white males.

41. Tim Hoffmann, Plaintiff's second line supervisor, is a white male whose selections have routinely been white males.

42. There are no larger, taller black females in these positions in the Agency in Kansas City.

6

43. Plaintiff has observed that the management officials in the Agency treat men and Caucasians differently from African-American females.

44. Plaintiff has also been diagnosed with ADHD. During the application process, she was specifically asked about her disability and her ability to care for her son even though she always received high marks in her evaluations and had requested no accommodations for her ADHD.

45. Plaintiff sought clarification of the reasons for her non-selection from the hiring official but received no objective information explaining the non-selection.

46. After Plaintiff sought clarification of the reasons behind her non-selection and approached an EEO investigator about her complaints, Ms. Lee became the subject of ongoing harassment and reprisal.

47. Following her objection to non-selection and her reaching out to an EEO counselor, her supervisors began to nitpick her work. They even carried it to other individuals in the Agency to attempt to get negative commentary on her performance.

48. Her supervisors began taking work from her and giving it to other individuals.

49. Her direct supervisor began undermining her work so that she could not be successful.

50. Although she worked on confidential and high-profile matters and held a position for which others were given private offices, she was moved to a back corner of the building with the support personnel.

51. Plaintiff took a position based in Washington, D.C. for which she largely teleworked from Kansas City.

52. Rodger Matthews specifically attempted on more than one occasion to undermine Plaintiff's relationship with her new managers by making allegations about her and her work that were untrue.

53. When Plaintiff began to travel as part of her position, Mr. Matthews started watching her time and attendance closely. He tried to "tattle" about Plaintiff's comings and goings to her supervisor in Washington, D.C. despite the fact that he had no supervisory authority over her after she took the new position.

54. Plaintiff was kicked out of systems, taken off meetings and roles she had not yet transitioned; she was not able to get a backup for the subject matter she worked; her backup was taken off her work.

55. Those who supported Plaintiff, including her backup and her supervisor, were harassed for supporting Plaintiff.

56. Because of the harassment that Plaintiff was getting and the "tattling" that Rodger Matthews attempted with Plaintiff's Washington D.C. supervisor, the D.C. work group decided to make Plaintiff a "remote employee" enabling her to work from home.

57. Plaintiff removed her equipment to begin full-time telework.

58. Matthews objected to Plaintiff being able to work from home and required Plaintiff to maintain an office at the Kansas City facility. This caused the Plaintiff to have to return all the removed equipment to the office where she was embarrassed because she was asked by numerous employees "what happened."

59. When Plaintiff was traveling or on vacation, Matthews sent her supervisor pictures showing Plaintiff was not at her desk. Someone put a sign up on her desk that said, "at home

8

teleworking." As Matthews had a policy against telework, the sign was made to engender jealousy and disrespect of Plaintiff.

60. Plaintiff was subjected to ongoing harassment and discrimination by Rodger Matthews and others until his retirement.

61. Plaintiff filed complaints of harassment, discrimination and reprisal. The Agency accepted for investigation the following issues:

    a. Whether Aggrieved Party (AP) was subjected to discrimination on the bases of her Race (African-American), Color (Black), sex (female), and Mental Disability (ADHD) when she was not selected for Chief, Policy Administration Branch, Product Management GS-1801-14, vacancy announcement number RMA-17-0006-RMA-TJ.

    b. Since December 1, 2016, management subjected her to undefined acts of harassment resulting from her non-selection.

62. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

### COUNT 1: RACE DISCRIMINATION AND SEX DISCRIMINATION
### DISPARATE TREATMENT

63. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–62.

64. Plaintiff, a black female, is a member of a protected class.

65. She was qualified for the position she held at the USDA and met her employer's legitimate performance expectations.

9

Case 4:20-cv-00408-DGK   Document 1   Filed 05/22/20   Page 9 of 18

66. Plaintiff suffered adverse job actions when management:

    a. Failed to promote Plaintiff to the position of Chief, Policy Administration Branch, Product Management GS-1801-14, vacancy announcement number RMA-17-0006-RMA-TJ;

    b. Began taking work from her and giving it to other individuals;

    c. began undermining her work so that she could not be successful;

    d. moved her desk to a back corner of the building with the support personnel, although she worked on confidential and high-profile matters and held a position for which others were given private offices;

    e. Rodger Matthews specifically attempted on more than one occasion to undermine Plaintiff's relationship with her new managers by making allegations about her and her work that were untrue;

    f. Mr. Matthews started watching her time and attendance closely despite knowing she was traveling as part of her position, and he tried to "tattle" about Plaintiff's comings and goings to her supervisor in Washington, D.C.

    g. kicked Plaintiff out of systems, took her off meetings and roles she had not yet transitioned; would not allow her to get a backup for the subject matter she worked; took her backup off her work.

    h. harassed other employees, including Pam Bollinger, her immediate supervisor and her backup for supporting Plaintiff;

    i. interfered with Plaintiff's status as a "remote employee" and required her to man a desk in Kansas City despite her workstation being in Washington, D.C.;

j. Matthews sent Plaintiff's DC supervisor pictures showing Plaintiff was not at her desk at times he knew Plaintiff was either on approved vacation or traveling for her position;

k. allowed an unknown person to put a sign on her desk that said, "at home teleworking." As Matthews had a policy against telework, the sign was made to engender jealousy and disrespect of Plaintiff;

l. other events as set forth in the Statement of Facts.

67. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than Plaintiff.

68. The Agency and Management had a pattern or practice of elevating only one female at a time for leadership roles but only those who were cute, Caucasian, and blonde.

69. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

### COUNT 2: DISCRIMINATION BASED UPON DISABILITY OR PERCEIVED DISABILITY

70. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–69.

71. Plaintiff, a female diagnosed with ADHD, is a member of a protected class.

72. Defendants knew of Plaintiff's diagnosis as she told them once she received it.

73. Plaintiff neither asked for nor required an accommodation for her ADHD. Despite that, Defendants specifically inquired into it during the application process for the Chief, Policy Administration Branch, Product Management GS-1801-14.

74. After Plaintiff received substantially higher marks than the selectee, she sought information regarding her non-selection and was given information indicating that her perceived disability motivated or contributed to the non-selection.

75. She was qualified for the position she held at the USDA and met her employer's legitimate performance expectations.

76. Plaintiff suffered adverse job actions when management:

a. Failed to promote Plaintiff to the position of Chief, Policy Administration Branch, Product Management GS-1801-14, vacancy announcement number RMA-17-0006-RMA-TJ;

b. began taking work from her and giving it to other individuals;

c. began undermining her work so that she could not be successful;

d. moved her desk to a back corner of the building with the support personnel, although she worked on confidential and high-profile matters and held a position for which others were given private offices;

e. Rodger Matthews specifically attempted on more than one occasion to undermine Plaintiff's relationship with her new managers by making allegations about her and her work that were untrue;

f. Mr. Matthews started watching her time and attendance closely despite knowing she was traveling as part of her position, and he tried to "tattle" about Plaintiff's comings and goings to her supervisor in Washington, D.C.;

g. kicked Plaintiff out of systems, took her off meetings and roles she had not yet transitioned; would not allow her to get a backup for the subject matter she worked; took her backup off her work.

h. Harassed other employees, including Pam Bollinger, her immediate supervisor and her backup for supporting Plaintiff;

i. Interfered with Plaintiff's status as a "remote employee" and required her to man a desk in Kansas City despite her workstation being in Washington, D.C.;

j. Matthews sent Plaintiff's DC supervisor pictures showing Plaintiff was not at her desk at times he knew Plaintiff was either on approved vacation or traveling for her position;

k. Allowed an unknown person to put a sign on her desk that said, "at home teleworking." As Matthews had a policy against telework, the sign was made to engender jealousy and disrespect of Plaintiff;

l. Other events as set forth in the Statement of Facts.

77. The Agency and Management Officials treated similarly situated employees more favorably than Plaintiff.

78. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 3: RACIALLY HOSTILE ENVIRONMENT
## ALL DEFENDANTS

79. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–78.

80. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a racially hostile environment in that:

   a. Plaintiff was subjected to harassment;

   b. The harassment was unwelcome;

   c. The harassment was based upon Plaintiff's race;

   d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

   e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

   f. Defendants knew or should have known of the harassment; and

   g. Defendants failed to take prompt, appropriate corrective action to end the harassment.

81. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 4: HOSTILE ENVIRONMENT BASED ON SEX
## ALL DEFENDANTS

82. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–81.

83. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a hostile environment based on sex in that:

    a. Plaintiff was subjected to harassment;

    b. The harassment was unwelcome;

    c. The harassment was based upon Plaintiff's race;

    d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

    e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

    f. Defendants knew or should have known of the harassment; and

    g. Defendants failed to take prompt, appropriate corrective action to end the harassment.

84. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 5: RETALIATION
## ALL DEFENDANTS

85. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–84.

86. Plaintiff complained to Defendants her concerns that she was being discriminated against directly and through her EEO informal counseling that occurred in January 2017 as well as her later formal complaint.

87. Plaintiff reasonably believed that Plaintiff was being harassed and/or discriminated against on the basis of race and sex or age.

88. Defendant engaged in adverse actions against the Plaintiff including that they:

   a. began taking work from her and giving it to other individuals;

   b. began undermining her work so that she could not be successful;

   c. moved her desk to a back corner of the building with the support personnel, although she worked on confidential and high-profile matters and held a position for which others were given private offices;

   d. Rodger Matthews specifically attempted on more than one occasion to undermine Plaintiff's relationship with her new managers by making allegations about her and her work that were untrue;

   e. Mr. Matthews started watching her time and attendance closely despite knowing she was traveling as part of her position, and he tried to "tattle" about Plaintiff's comings and goings to her supervisor in Washington, D.C.;

   f. kicked Plaintiff out of systems, took her off meetings and roles she had not yet transitioned; would not allow her to get a backup for the subject matter she worked; took her backup off her work;

g. Harassed other employees, including Pam Bollinger, her immediate supervisor and her backup for supporting Plaintiff;

h. Interfered with Plaintiff's status as a "remote employee" and requiring her to man a desk in Kansas City despite her workstation being in Washington, D.C.;

i. Matthews sent Plaintiff's DC supervisor pictures showing Plaintiff was not at her desk at times he knew Plaintiff was either on approved vacation or traveling for her position;

j. Allowed an unknown person to put a sign on her desk that said, "at home teleworking." As Matthews had a policy against telework, the sign was made to engender jealousy and disrespect of Plaintiff;

k. Other events as set forth in the Statement of Facts.

89. Plaintiff's complaints of racial and sex based harassment and/or discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff.

90. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue judgment against the Defendants for all the damages that Plaintiff has incurred, including without limitation, physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Plaintiff is entitled;

2. Issue judgment against the Defendants for equitable or injunctive relief;

3. Issue judgment against the Defendants, or any Defendant, for punitive and/or statutory damages to which the Plaintiff may be entitled due to the Defendants' intentional violation of the rights of the Plaintiff;

4. Award Plaintiff her reasonable attorneys' fees, costs, and expenses;

5. Award to Plaintiff any and all such further relief as may be equitable and just.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA M. RANDLES   MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

Attorney for Plaintiff

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.